UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAMERON G. ROUPE,

                Plaintiff,

   v.

JAMES STRICKLAND, *et al.*,

                Defendants.

Case No. C13-2131 JCC-BAT

**REPORT AND RECOMMENDATION**

In this 42 U.S.C. § 1983 civil-rights action, Plaintiff Cameron G. Roupe alleges that Defendant Strickland violated his constitutional rights when he unlawfully tased him in the scrotum and that Defendant Veach violated his constitutional right when he stood by and failed to report Defendant Strickland's use of the taser. Dkt. 9. Defendants move for summary judgment. Dkt. 128. The Court recommends **GRANTING** Defendants summary judgment motion and dismissing Plaintiff's claims with prejudice.

**FACTS**

**A.    Events Prior to Involvement of Defendants Strickland and Veach**

On March 26, 2012, Marysville police officers, who are not parties to this matter, responded to a domestic violence assault call at T&T Upholstery. According to the police report of Officer Young, he and Officer Rusch responded to a domestic violence assault at T&T

REPORT AND RECOMMENDATION - 1

Upholstery. They had been advised by dispatch that Cameron Roupe had assaulted Jennifer Walker at another location, followed her to T&T Upholstery, and continued to assault her there. Dispatch also advised that there was a served protection order in place protecting Ms. Walker from Mr. Roupe. Dkt. 134, Exhibit A, p. 5 (ECF numbering).

Officers found Mr. Roupe on top of Jennifer Walker and pinning her down on a couch. Police detected an overwhelming odor of intoxicants coming from Mr. Roupe. When police attempted to get Mr. Roupe away from Ms. Walker and take him into custody, Mr. Roupe fought with police officers. Police officers used force on Mr. Roupe including an arm bar takedown, closed fist strikes to his right shoulder, and a knee strike to his right shoulder which glanced off and hit his head. During this altercation with police, Mr. Roupe's chin hit the floor and he began bleeding in his face. He also vomited during the struggle. *Id.*, p. 6.

After finally getting handcuffs on Mr. Roupe, police officers called for medics to provide medical assistance to Mr. Roupe. Mr. Roupe turned his head towards one of the medics and spit vomit, blood and phlegm on a medic, so police officers put a spit hood on him. *Id.*, *see also* Dkt. 134, Kugler Decl, Exhibit D, Cody Hamblin Sworn Statement, p. 16 ("When I squated [sic] down to evaluate the patient's chin, he proceeded to spit all over my left arm and hand. The patient then commented 'your [sic] exposed' and then proceeded to laugh.")

Mr. Roupe became enraged by the placement of the spit hood and he thrashed and flailed more vigorously. Police officers decided to place him in a 4-point restraint chair to allow medics to treat him. *Id.*, Exhibit A, pp. 6-7. When Mr. Roupe refused to cooperate in getting him into the restraint chair, police officers took him to the ground again. During the process, Mr. Roupe thrashed and kicked a Detective. Officer Young delivered two more knee strikes, this time to Mr. Roupe's solar plexus, but this had no affect on Mr. Roupe's resistance. Officer Young then

1  delivered three to four closed fist strikes to his right thigh, with no effect, followed by two knee
2  strikes to Mr. Roupe's right thigh, also with no effect. *Id.*, Exhibit A, p. 7.  Officer Young then
3  removed the taser cartridge from his taser and applied a five second drive stun to Mr. Roupe's
4  right thigh. *Id.*  After the five seconds ended, Mr. Roupe relaxed his leg and the officers were
5  able to place him in the restraint chair. *Id.*

6  Mr. Young had a partially healed cut on his thumb that was torn open in the process of
7  arresting Mr. Roupe and Mr. Young was later tested for potential blood born pathogen exposure.
8  Officers and medics were exposed to Mr. Roupe's blood, vomit, and spit. *Id.*  Mr. Roupe
9  suffered a fracture to a fifth finger. *Id.*, Kugler Decl., Exhibit F (Providence ER record), p. 22;
10 Dkt. 9, p. 11.

11  Ms. Walker reported to police that Mr. Roupe had been drinking and had assaulted her
12 and forced her to have sex with him over the previous two days.  She fled for her safety and he
13 had called her and threatened to knock her teeth out. Dkt. 134, Exhibit B, Walker Sworn
14 Statement, p. 12.  She reported that when Mr. Roupe found her at her place of employment (T&T
15 Upholstery) on March 26, 2012, he threw her on the couch, punched her in the face, and choked
16 her. *Id.*, p. 10.  A witness at T&T Upholstery (Bonnie Follestad) also reported seeing Mr. Roupe
17 throw Ms. Walker on the couch, punch her in the face and choke her. Dkt. 134, Exhibit C,
18 Sworn Statement of Bonnie Follestad, p. 14.

19  Mr. Roupe acknowledges that he had been in an argument with Ms. Walker, had gone to
20 a bar and began drinking alcohol, and then decided to go to her place of employment to confront
21 her, where he became irate and assaulted her.  He acknowledges that he "struggled" with officers
22 when they were trying to arrest him. Dkt. 9, pp. 8-10.  Mr. Roupe was subsequently convicted of
23 assault and violation of a protection order, a class C felony, and is serving a five year prison

REPORT AND RECOMMENDATION - 3

sentence for this offense.  Dkt. 134, Kugler Decl., Exhibit I, p. 47.

**B.     Involvement of Strickland and Veach**

Defendant James Strickland is a Custody Sergeant and the supervisor of the City of Marysville Jail.  Dkt. 130, Declaration of James Strickland, p.p. 1-2.  At the time of Mr. Roupe's arrest, Defendant Veach was a Custody Officer at the jail.  Dkt. 131, Declaration of Adam Veach, p. 1.  (Officer Veach is now a City of Burlington police officer).  *Id.*  After Mr. Roupe was brought to the city jail in the restraint chair and spit mask following his arrest, Officers Strickland and Veach transported Mr. Roupe to Providence Everett Medical Center ("Providence EMC") for treatment of the injuries he received during his arrest.  Dkt. 130, Strickland Decl., p. 2; Dkt. 131, Veach Decl., p. 2.

Assisted by security officers from Providence EMC, Officers Strickland and Veach moved Mr. Roupe into the hospital while he was still restrained in the restraint chair. *Id.*  Officer Strickland and Chad Lisenby, Providence EMC's security supervisor, determined that it was necessary to keep Mr. Roupe fully restrained while he received medical treatment due to Mr. Roupe's erratic behavior, statements about his anger and verbal threats, and concern about the safety of hospital medical staff and security officers.  Dkt. 130, Strickland Decl., p. 3; Dkt. 132, Declaration of Chad Lisenby, p. 2.  All on-the-job hospital security officers were called in to assist in transferring Mr. Roupe from the restraint chair to a hospital bed and to put the hospital's own restraints on Mr. Roupe.  Dkt. 130, Strickland Decl., p. 2; Dkt. 131, Veach Decl., p. 2; Dkt. 132, Lisenby Decl., p. 2.

Mr. Roupe resisted the security officers' efforts to place his arms and legs in the hospital's restraints so Officers Strickland and Veach assisted.  *Id.*  When Mr. Lisenby attempted to put a hospital wrist identification band on Mr. Roupe, Mr. Roupe (despite his restraints) was

REPORT AND RECOMMENDATION - 4

1  able to grab Mr. Lisenby's fingers and was bending them backwards, causing him pain and
2  making him afraid that Mr. Roupe might break his fingers.  Dkt. 132, Lisenby Decl., p. 2; Dkt.
3  130, Strickland Decl., p. 3.  To protect Mr. Lisenby, Officer Strickland drew his taser, ordered
4  Mr. Roupe to stop or be tased and when Mr. Roupe did not comply, applied a contact tase, with
5  the probe cartridge removed, to Mr. Roupe's left thigh until Mr. Roupe let go of Mr. Lisenby's
6  fingers.  Dkt.130, Strickland Decl., p. 3; Dkt. 131, Veach Decl., pp. 2-3; Dkt. 132 Lisenby Decl.,
7  pp. 2-3; Dkt. 133, Declaration of Will Wormley, Security Officer at Providence EMC, pp. 1-2
8  and Exhibit.

9       According to Officer Strickland, he was trained to use the taser on the thigh because this
10 is an area with large muscles.  Dkt. 130, Strickland Decl., p. 3.  He was trained that this is a safe
11 and effective location to apply a taser without the probe cartridge.  *Id.*  Mr. Lisenby believes that
12 Officer Strickland's quick action prevented Mr. Roupe from injuring his fingers.  Dkt. 132,
13 Lisenby Decl., p. 3.  Officer Strickland used no other force on Mr. Roupe.  Dkt. 130, Strickland
14 Decl., p. 3.

15       Officer Veach never used any force on Mr. Roupe.  Dkt. 131, Veach Decl., p. 3.  Officer
16 Veach is trained as an instructor and field training officer and he trains corrections officers and
17 police officers.  *Id.*, p. 2.  Officer Veach states that Officer Strickland's use of force for the
18 protection of Mr. Lisenby was in accordance with the training Officer Veach has received.  *Id.*,
19 p. 3.

20       Hospital security officers subsequently transferred Mr. Roupe to a backboard with
21 four point locking restraints to enable hospital staff to conduct a CT scan.  Dkt. 132, Lisenby
22 Decl., p. 3.  Although Providence EMC security officers deal with aggressive patients on a daily
23 basis, putting a patient on a backboard with restraints in order to conduct a CT scan happens only

REPORT AND RECOMMENDATION - 5

two to three times per year and only with their most violent patients. *Id.*

Mr. Roupe received stitches to a laceration on his chin and a soft cast on his left hand for injuries he received in his altercation with police officers during his arrest. Dkt. 130, Strickland Decl., p. 4; Dkt. 134, Kugler Decl., p. 22. After the hospital gave Mr. Roupe medical clearance, Officer Strickland transported him to the Snohomish County Jail. Dkt. 130, Strickland Decl., p. 4. At the county jail, Mr. Roupe began arguing with the county jail staff, which caused several other jail officers to come to the booking area to assist. *Id.*, p. 4. County jail staff put Mr. Roupe in an isolation cell away from other inmates and staff. *Id.*

After transporting Mr. Roupe to the county jail, Officer Strickland reported his use of the taser to his department and did a use of force report in accordance with department policies. Dkt. 130, Strickland Decl., p. 4.

**C.     Mr. Roupe's Tasing Claims**

Mr. Roupe was tased at a hospital and received medical treatment after he was tased. The symptoms Mr. Roupe reported to hospital medical staff during treatment related solely to injuries he received during his arrest: a laceration on his chin, head and neck pain, pain over his left chain and pain in his upper quadrant. Dkt. 134, Kugler Decl., pp. 2, 19. Mr. Roupe reported no symptoms related to Officer Strickland's use of the taser. *Id.* The only diagnoses made by medical staff were a laceration to his chin and fracture of his left fifth finger. *Id.*, p. 22. There is no reference anywhere in the Providence EMC records to any complaint by Mr. Roupe that he was tased in the scrotum or genitals, nor is there any record that he reported any symptoms in his scrotum or genitals. *Id.*

Snohomish County Jail records of the medical and psychiatric assessment performed when Mr. Roupe was booked into the jail reflect that Mr. Roupe's only complaints of injury

during the previous twenty-four hours were "broken hand, cut/stitches to chin" (injuries received during his arrest, in which Officers Strickland and Veach were not involved) with no mention of or claim that he was tased or injured in his scrotum or genitals, nor any claim of injury or symptoms in these areas. Dkt. 134, Kugler Decl., pp. 33, 36.

Medical records from the county jail reflect that Mr. Roupe was seen by medical staff at the jail on March 27, 2012, March 28, 2012, and April 2, 2012, related to injuries he received during his arrest. *Id.*, pp. 38-42. There is no record of any report by Mr. Roupe to jail medical staff that he was tased on his scrotum or genitals or any report of any symptom in this area of his body. *Id.*

On August 2, 2013, Mr. Roupe filed a complaint with the Marysville Police Department alleging that he was "unlawfully Tazed while in restraints" by Officer Strickland. Dkt. 134, Kugler Decl., pp. 45, 61, and 65. Mr. Roupe's complaint contains his sworn statement of the gist of his complaint and basic facts of what happened. *Id.* His complaint alleged that this use of force was unlawful because it occurred while he was in restraints. It contains no description or claim that he was tased in his scrotum or genitals. *Id.*

## DISCUSSION

**A.   Excessive Force Claim – Defendant Strickland**

The Eighth Amendment standards for claims of excessive force against inmates by prison officials are well-established. In determining whether the use of force against a prisoner violates the Eighth Amendment, the core inquiry is whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In order to determine whether force is excessive and violative of the Eighth Amendment, the court must evaluate both the objective and subjective

components of the alleged violation. *Id.* Therefore, the extent of the injury suffered by the plaintiff is a relevant but not dispositive factor in determining whether the force used was appropriate. *Id.* However, the Eighth Amendment does not reach *de minimis* uses of physical force. *Id.*

The subjective component relates to whether or not the defendants had a wanton state of mind when they engaged in the use of force. In evaluating whether the use of force was wanton or unnecessary, the court should consider the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the defendants, and any efforts made to temper the severity of a forceful response. *Id.*

The record reflects that Officer Strickland used the taser because Mr. Roupe posed an immediate threat to the safety of security officer Chad Lisenby when Mr. Roupe grabbed Mr. Lisenby's fingers and bent them backwards. Mr. Roupe was able to do this even though his arms were restrained and he did not stop when commanded and threatened with the taser.

Viewing the evidence in the light most favorable to Mr. Roupe, the undersigned concludes that Mr. Roupe has failed to establish a genuine issue of material fact as to the need to use force and the amount of force used. The evidence reflects that Officer Strickland reasonably perceived that he had to act quickly to stop Mr. Roupe from further harming Mr. Lisenby and that he did so by applying his taser to Mr. Roupe's thigh until Mr. Roupe let go Mr. Lisenby's fingers. Mr. Roupe has failed to show that the Defendant Strickland used force maliciously and sadistically for the purpose of causing harm.

Accordingly, the undersigned recommends that Mr. Roupe's Eighth Amendment claim of excessive use of force against Defendant Strickland be dismissed with prejudice.

//

**B.     Claim Against Defendant Veach**

Mr. Roupe does not allege that Officer Veach personally used any force against him. Instead, he alleges that Officer Veach stood by when Officer Strickland used the taser and that Officer Veach did not report Officer Strickland's use of the taser. Dkt. #9, p.3.

To state a claim under the civil rights act, 42 U.S.C. § 1983, a plaintiff must prove (1) a person acting under color of state law (2) deprived the plaintiff of a federal right. *Gomez v. City of Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980).  Section 1983 creates a cause of action against the individual or individuals who deprive a person of a federal right.

There is no evidence that Officer Veach deprived Mr. Roupe of any federally protected right.  Officer Strickland used the taser and filed a report regarding his use of force.  There is no federal or constitutional law requiring that Officer Veach prepare a report regarding Officer Strickland's use of force.  In addition, an officer cannot be held liable under Section 1983 because of his membership in a group without a showing of individual participation in the unlawful conduct. *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996).  Here, there is no evidence that Officer Veach individually participated in any unlawful conduct and therefore, Mr. Roupe's claims against him should be dismissed.

**CONCLUSION**

The Court recommends that Defendants' motion for summary judgment be **GRANTED** and this action be **DISMISSED WITH PREJUDICE.**

Any objections to this Recommendation must be filed and served upon all parties no later than **Monday, January 5, 2014.**   The Clerk should note the matter for **Thursday, January 8, 2015,** as ready for the District Judge's consideration if no objection is filed.  If objections are

filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed twelve (12) pages.  The failure to timely object may affect the right to appeal.

DATED this 15th day of December, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10